**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FARASHGARD FOUNDATION, INC.,<br>Plaintiff,<br>v.<br>AMIR HOSSEIN ETEMADI,<br>Defendant. | Case No. 22-cv-2730 (JMC) |

**MEMORANDUM OPINION & ORDER**

The Farashgard Foundation alleges that after it had a falling out with Amir Hossein Etemadi—one of its founding members—Etemadi launched a competing organization using the Foundation's name and logos. Because the Foundation's complaint plausibly alleges that Etemadi's actions amounted to trademark infringement in violation of the Lanham Act and the common law prohibition on unfair competition, the Court **DENIES** Etemadi's motion to dismiss.[1]

## I. BACKGROUND

The Farashgard Foundation was founded in 2018 "with the express purpose of supporting and promoting Iranian citizens' fundamental rights to liberty and [the] pursuit of democracy." ECF 1 ¶ 7. The Foundation works toward that end "through projects and initiatives" that "enable" "the people of Iran's struggle for democracy . . . to better connect with the rest of the world." *Id.* The Foundation has, for instance, "cover[ed] . . . peaceful protects in Iran through Iranprotests.com," operated something it calls "the women's rights portal," and made "many

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

television and radio appearances with the express purpose of raising awareness about the plight of people in Iran." *Id.* Farashgard "is a Persian word" that "translates to '[r]evival.'" *Id.* ¶ 9. That meaning is reflected in the Foundation's logo, which includes "the words 'Iran Revival' in English and in Persian." *Id.* ¶ 15.

Iran Revival - فَرَشگَرد

In the summer of 2019, the Foundation had a falling out with one of its founding members, Amir Hossein Etemadi. *See* ECF 1 ¶¶ 22–23. Etemadi "began to vehemently express disagreement with and . . . create discord among [t]he Foundation's key decision makers." *Id.* ¶ 23. During this conflict, Etemadi took control of the Foundation's "social media accounts and websites," "changing the associated passwords and login information so that other members of [t]he Foundation could not regain access." *Id.* ¶ 24. Soon thereafter, Etemadi "severed ties with [t]he Foundation." *Id.* ¶ 25. At that point, "he and others created and started operating as a completely separate entity, which [Etemadi] referred to . . . as 'Iran Revival' and 'Farashgard.'" *Id.* On this new organization's website, it described itself as "a 'political network for subversion' [that] operates 'with the aim of nonviolently overthrowing the Islamic Republic of Iran.'" *Id.* ¶ 25; *see* ECF 1-5 at 3.

Etemadi's new organization not only made use of the "Farashgard" name but also used a logo that looks identical to the Foundation's logo. ECF 1 ¶ 25; *compare id.* ¶¶ 14–15 (Foundation's logos), *with* ECF 1-5 at 2 (Etemadi's new organization's website). The logo, accompanied by the words "Iran Revival" in English and Persian, were placed prominently on the new organization's website. *See* ECF 1-5 at 2.

Unsurprisingly, the Foundation was none too pleased with Etemadi. *See* ECF 1 ¶ 27. The Foundation had registered trademarks for its name—"Farashgard"—as well as two versions of its logo, one without text and one with. *See id.* ¶¶ 13, 20. Believing Etemadi was unlawfully using its intellectual property, the Foundation brought this lawsuit. It alleged Etemadi violated two provisions of the Lanham Act—15 U.S.C. § 1114, which applies to the unlawful use of "registered marks," and section 15 U.S.C. § 1125(a), which "protects qualifying unregistered trademarks"—and also committed "common law trademark infringement and unfair competition." *Matal v. Tam*, 582 U.S. 218, 225–26 (2017) (discussing section 32 and section 43(a) of Lanham Act, codified respectively at 15 U.S.C. § 1114 and § 1125(a)); ECF 1 ¶¶ 34, 43, 52. The Foundation sought both monetary and injunctive relief. *See* ECF 1 at 12–13.

Etemadi moved to dismiss under Rules 12(b)(6) and (b)(1). *See* ECF 20 at 6. Etemadi argues the Foundation fails to state plausible Lanham Act claims for two reasons. First, because the complaint does not plausibly allege that Etemadi used the Foundation's name or logos "in connection with the sale of any good or service," the Foundation has not alleged an element of both its Lanham Act claims. ECF 28 at 5. Second, because the Foundation has not plausibly alleged that "its commercial interests have been or are likely to be harmed," it lacks statutory standing to assert its "unfair competition" claim. ECF 20 at 8, 17. Etemadi also argues that the Foundation's request for monetary relief on its Lanham Act claims should be dismissed because it has not plausibly alleged "actual damages." *Id.* at 21. As for the state law claims, Etemadi says the Court should decline to retain supplemental jurisdiction over them after dismissing the federal claims and that, even if the Court does retain jurisdiction, they fail for the same reasons the federal claims fail. *See id.* at 21–22.

## II. LEGAL STANDARD

"To survive" a Rule 12(b)(6) "motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court "must treat the complaint's factual allegations as true . . . and must grant [the] plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "In deciding a motion to dismiss, a court may . . . consider documents attached to . . . the complaint." *He Depu v. Yahoo! Inc.*, 950 F.3d 897, 901 (D.C. Cir. 2020).

## III. ANALYSIS

The Court begins by addressing Etemadi's arguments about the Lanham Act claims, before turning to the common law claim. Because Etemadi has not identified a ground to dismiss any of the claims, the Court denies his motion.

**A. The Foundation's Lanham Act claims survive Etemadi's motion to dismiss.**

Etemadi seeks to dismiss the Lanham Act claims on two grounds—that the complaint does not plausibly allege Etemadi used the Foundation's marks "in connection with the sale of any good or service" and that the Foundation does not have statutory standing to bring claims under the Act. *See* ECF 20 at 14, 17. Etemadi also makes a narrower argument, insisting that even if the claims can proceed, the Foundation's request for monetary damages under the Lanham Act cannot. *See id.* at 20. The Court rejects all three arguments.

**1. The Foundation plausibly alleges that Etemadi used its marks in connection with goods or services.**

Both of the Foundation's Lanham Act claims require proof that Etemadi used the marks "in connection with the sale . . . or advertising of any goods or services." 15 U.S.C. § 1114(1)(a); *see id.* § 1125(a)(1) (imposing liability if used "in connection with any goods or services"). Although the "in connection with" language in the two provisions comes with slightly different verbal formulations, liability under the two sections is "measured by the same standards" and neither side has suggested that the "in connection with" requirement varies between the two sections. *Verizon Trademark Servs. LLC v. Verizon Trademark Servs. LLC*, No. 23-cv-2750, 2024 WL 50970, at *3 (D.D.C. Jan. 4, 2024). The Court therefore proceeds with the two claims together, asking whether the complaint plausibly alleges that Etemadi used the Foundation's marks "in connection with the sale . . . or advertising of any goods or services." 15 U.S.C. § 1114(1)(a).

There is no suggestion in the complaint that Etemadi's new organization is selling or advertising goods. The Foundation therefore focus on "services," arguing that Etemadi is using its intellectual property "in connection with fundraising and directing the public away from" the Foundation and towards Etemadi's new organization. ECF 24 at 11–12, 15. That use, the

Foundation argues, is a use "in connection with the sale, offering for sale, distribution, or advertising of services." *Id.* at 12.

Etemadi does not argue that the Foundation's legal theory is unsound or that non-profits generally are beyond the scope of the Lanham Act. ECF 28 at 6–7. For good reason. "The term 'services' has been interpreted broadly" and the "Lanham Act has . . . been applied to defendants furnishing a wide variety of non-commercial public and civic benefits." *United We Stand Am., Inc. v. United We Stand, Am. N.Y., Inc.*, 128 F.3d 86, 89–90 (2d Cir. 1997). That includes, for instance, organizations that "solicit[] . . . donations," that "organiz[e] on behalf of [their] members," or that "engage[] in dissemination of information about" particular "causes." *Id.* at 90. The provision of news and information, the coordination of political and social activities, and the collection of funds to be used on a cause the supporters care about are all "services . . . rendered" by an organization for its "members, adherents," or supporters. *Id.*; *see also Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 537 (6th Cir. 2024) (collecting cases holding that "political or nonprofit defendants" have "use[d] a trademark in connection with the advertisement of any goods or services").

Instead, Etemadi argues that even accepting the Foundation's argument as sound in theory, it fails because the complaint does not "plausibly allege facts demonstrating" that Etemadi "has engaged in any transactions in connection with" the Foundation's claimed intellectual property. ECF 28 at 7. The Court disagrees. The Foundation attached as an exhibit to its complaint a screen shot of the "About Us" page from Etemadi's new organization's website. ECF 1-5 at 3. That page starts by describing the founding history of "Farashgard (Iran Revival)." *Id.* Further down, the new organization describes some of its "campaigns": a "crowd-sourcing project to aid nationwide protests in Iran . . . with the support of the Farashgard (Iran Revival) network" that seemingly resulted in the publication of information about "strikes" and police activity inside of Iran; a

"campaign of civil disobedience" called "My Face to the Nation! My Back to the Enemy!"; and a "Wanted Campaign" in which "Farashgard . . . expose[s] the responsibility of authorities in Iran for their violation of the rights of the people" and "lay[s] the groundwork for" those authorities' "prosecution in a court of law." ECF 1-5 at 3–4.

It is plausible to infer from the complaint's allegations about the content of this website that Etemadi's new organization is using the Foundation's intellectual property "in connection with" the "advertising of" the new organization's "services." 15 U.S.C. § 1114(1)(a). The about page discusses the new organization's fundraising activities (the "crowd-sourcing project"), its dissemination of information (the tracking of police activity and the "Wanted Campaign"), and its political organizing (a "campaign of civil disobedience"). ECF 1-5 at 3–4. That page's description of the new organization's activities leads to the plausible inference that the organization is engaged in the "solicitation of donations," "dissemination of information," and "organiz[ation]" of advocacy campaigns. *United We Stand Am., Inc.*, 128 F.3d at 90. Those activities constitute a "service." *Id.* And the screenshot from the website also supports the inference that Etemadi's new organization is using the Foundation's marks "in connection with," 15 U.S.C. § 1114(1)(a), those services. While describing its activities, the new organization repeatedly calls itself "Farashgard," and the Foundation's logo is featured prominently at the top of the webpage. ECF 1-5 at 3. The complaint therefore plausibly alleges that Etemadi is using the Foundation's marks "in connection with the . . . advertising of . . . services." 15 U.S.C. § 1114(1)(a); *see also id.* § 1125(a)(1).[2]

The Court notes that this conclusion is consistent with the D.C. Circuit's decision in *Farah v. Esquire Magazine*, 736 F.3d 528 (D.C. Cir. 2013). In *Farah*, the plaintiff—a book publisher—

[2] Because the website attached to the complaint is alone sufficient to give rise to this plausible inference, the Court need not resolve whether the Foundation's allegation on "information and belief" about Etemadi's fundraising must be accepted as true. ECF 1 ¶ 25; *see* ECF 20 at 16 (arguing Court should not accept that allegation as true).

sued Esquire Magazine after it released a satirical article about the publisher's book. *See id.* at 530. The publisher alleged that Esquire violated the Lanham Act by publishing "false and misleading information and description of fact" about the book, thereby "caus[ing] confusion, mistake, and deception." *Id.* at 533. The Circuit rejected that claim, holding that Esquire's article could not "plausibly be viewed as commercial speech" so could not qualify as a use of the publisher's marks "in connection with any goods or services." *Id.* at 540–41. In reaching that conclusion, the court applied what it described as the unanimous view among the circuits that the relevant Lanham Act provision—one of the provisions at issue in this case—applies "only to commercial speech." *Id.* at 541.

This Court does not, however, understand *Farah* to stand for the proposition that "political or nonprofit defendants" can never run afoul of the Lanham Act. *Libertarian Nat'l Comm.*, 116 F.4th at 537. That would depart from a "long" line of cases and the settled view as expressed in a leading treatise. *Id.*; *see* J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 9:5 (5th ed. 2026) ("Nonprofit and charitable corporations are given the same protection against confusing use of their names as given to business corporations."); *see also Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 155 (2023) (approvingly citing decision applying Lanham Act to "political group" using another group's "slogan" despite the slogan's "expressive content"). It also would ignore the D.C. Circuit's admonition in *Farah* that although Esquire had not used the publisher's marks in a "commercial" way by publishing the satirical essay, "the Lanham Act could be applied" to publishers like Esquire in cases where "political tracts" are published "for commercial purposes." 736 F.3d at 541. In other words, the specific use of the marks is what matters for determining whether it is "commercial," not the mere fact that the use relates to "political" subject matter. *Id.*

The Court heeds *Farah*'s rule here and has rested its decision on the particular facts alleged in the complaint. Unlike in *Farah*, the Foundation has not alleged that Etemadi is "using" the Foundation's "trademarks to engage in social commentary about" the Foundation's "goods or services," as was the case with the satirical article about the publisher's book. *Libertarian Nat'l Comm.*, 116 F.4th at 537. Instead, the complaint alleges that Etemadi is using the Foundation's marks "to identify the source" of his new organization's own "services." *Id.* The Foundation has plausibly alleged that Etemadi is "using" its name and logos "in connection with the advertising" of his "own" fundraising and advocacy efforts to suggest that he is "affiliated with"—indeed *is*—the Foundation. *Id.* at 538. "[C]onfusion about the source of a product or service . . . is the bête noire of trademark law," *Jack Daniel's Props., Inc.*, 599 U.S. at 147, and nothing in *Farah* suggests that political advocacy groups are immune from liability when they create that kind of confusion.

**2. The Foundation plausibly alleges that it has statutory standing.**

Etemadi's next argument is that the Foundation fails to plausibly allege that it has statutory standing to press its "unfair competition" claim. ECF 20 at 17. It is not entirely clear whether this argument applies to both Lanham Act claims. In its opposition, the Foundation made clear that it understands the argument to go only to the claim brought under § 1125(a). *See* ECF 24 at 16 n.3. In his reply, Etemadi did not respond to that point or otherwise clarify the scope of this argument. *See* ECF 28 at 10–11. Because the argument ultimately fails, the Court need not delineate exactly how far it goes and instead addresses it in relation to both counts.

The term "statutory standing" is somewhat "misleading." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 n.4 (2014). Rather than an inquiry about "subject-matter jurisdiction" or the "court's . . . *power* to adjudicate the case," what it really refers to is an inquiry into "whether" the plaintiff "has a cause of action under the statute." *Id.* at 128 & n.4. "That question requires" a court "to determine the meaning of the congressionally enacted provision

creating a cause of action." *Id.* "In doing so, [the court] appl[ies] traditional principles of statutory interpretation." *Id.* Two particular "background principles" guide the inquiry. *Id.* at 129. First, courts "presume that a statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Id.* Second, courts "presume that a statutory cause of action is limited to plaintiffs whose injuries are proximately caused by violations of the statute." *Id.* at 132. Applying those principles here, the Foundation has plausibly alleged that it has a cause of action under the Lanham Act provisions it invokes.

As for the first Lanham Act claim, the plain text of the statute leaves no doubt that the Foundation "has a cause of action under the statute." *Lexmark*, 572 U.S. at 128. The relevant provision provides for a "civil action *by the registrant*"—that is, the "registrant" of the "registered mark" that was infringed. 15 U.S.C. § 1114(1) (emphasis added). The Foundation alleges that it registered three marks, its name and the two logos, that Etemadi has infringed. *See* ECF 1 ¶¶ 13, 20. "[T]raditional tools of statutory interpretation"—resort to the plain text—leave no doubt that the Foundation as the "registrant" has a cause of action. *Lexmark*, 572 U.S. at 127; 15 U.S.C. § 1114(1); *see also McCarthy on Trademarks* § 32:3.50 (explaining several reasons why "owner of a registered mark" has "statutory standing").

The second Lanham Act claim arises under 15 U.S.C. § 1125(a)(1), which provides a cause of action to "any person who believes that he or she is or is likely to be damaged." Applying the two "background principles" discussed above—related to the zone of interests and proximate causation—the Court has held that this cause of action does not sweep as broadly as its "language" suggests. *Lexmark*, 572 U.S. at 129. So it is not enough that the Foundation is a "person who believes that he or she is likely to be damaged." 15 U.S.C. § 1125(a)(1). Instead, the Court must

ask whether the Foundation has plausibly alleged that it falls within the zone of interests of the statute and has plausibly alleged an injury proximately caused by a violation of the statute.

"Identifying the interests protected by the Lanham Act . . . requires no guesswork, since the Act includes an unusual, and extraordinarily helpful, detailed statement of the statute's purposes." *Lexmark*, 572 U.S. at 131. Relevant here, Congress's "intent" was to "mak[e] actionable the deceptive and misleading use of marks." 15 U.S.C. § 1127. The Foundation's allegations go to the heart of that concern. It alleges that its marks—its name and logos—are being used misleadingly by Etemadi. *See* ECF 1 ¶¶ 9, 17, 26. That sort of confusion is "the thing that stands directly opposed to the [Lanham Act's] twin goals of facilitating consumers' choice and protecting producers' good will." *Jack Daniel's Props., Inc.*, 599 U.S. at 147. The Foundation has therefore plausibly alleged that it falls within the Lanham Act's zone of interests. *See McCarthy on Trademarks* § 32:3.50 (explaining author's view that "the owner of an unregistered mark who asserts trademark infringement by likelihood of confusion" is within the statute's zone of interests). And although the Supreme Court's holding that a plaintiff in a "false advertising" suit only comes within the zone of interests if he alleges "an injury to a commercial interest in reputation or sales" does not obviously apply to this case, which involves "false association" rather than "false advertising," *Lexmark*, 572 U.S. at 122, 131–32, the complaint satisfies that test, too. The Foundation has a "commercial interest" in its "reputation." *Id.* at 132. That interest is reflected in the "roughly $100,000" it has spent "marketing" its name and logos. ECF 1 ¶¶ 11, 18. The Foundation has plausibly alleged an injury to that interest: By creating confusion about what the Foundation is up to—is it responsible for Etemadi's activities?—Etemadi deprives the Foundation of control over its reputation. *See id.* ¶ 26 (alleging instances of "actual confusion").

The complaint also plausibly alleges an injury proximately caused by Etemadi's violations of the statute. The question for proximate cause is "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 572 U.S. at 133. The statute prohibits the use of marks in a manner "likely to cause confusion . . . as to the affiliation, connection, or association" of a "person with another person, or as to the origin, sponsorship, or approval of his or her . . . services." 15 U.S.C. § 1125(a)(1). The harm the Foundation is alleging—"confusion" about who is "in charge of" the Foundation and who "represent[s]" the Foundation, ECF 1 ¶ 26—is the direct result of that confusion-causing conduct the statute prohibits. *See Lexmark*, 572 U.S. at 133 ("[A] plaintiff can be directly injured by a misrepresentation even where a third party, and not the plaintiff, relied on it."); *accord Videri, Inc. v. ONAWHIM (OAW) Inc.*, No. 23-cv-2535, 2024 WL 4027980, at *14 (S.D.N.Y. Sep. 3, 2024) ("A trademark plaintiff can plead injury by pleading likelihood of confusion, since the unauthorized use of its mark invariably threatens injury to the economic value of the goodwill and reputation associated with the mark."); *McCarthy on Trademarks* § 32:3.50 ("[A] trademark owner, whether registrant or non-registrant, should have no difficulty satisfying the proximate causation requirement."). The Foundation has therefore plausibly alleged that it has a cause of action (i.e., statutory standing) to bring its Lanham Act claims.

**3. The Court will not dismiss the Foundation's prayer for damages.**

Etemadi's final argument aimed at the Lanham Act claims is that the Foundation "has not alleged . . . actual damages," so the Court should dismiss "any claim for money damages." ECF 20 at 21. As it turns out, that request presents a thorny set of procedural questions about how courts should "adjudicat[e] challenges to forms of relief sought in a complaint." *SEC v. Musk*, 826 F. Supp. 3d 35, 62–64 (D.D.C. 2026) (describing federal courts' "diverse" practices involving Rule 12(b)(6) and Rule 12(f)). Fortunately, the Court need not wade through that mare's nest here. Even

assuming that Etemadi has properly asked the Court to apply the Rule 12(b)(6) standard to the Foundation's request for monetary damages, the Foundation has adequately alleged its entitlement to that relief. *See McCallister v. The Walton Law Grp.*, No. 26-cv-9, 2026 WL 2176883, at *6 (D.D.C. July 29, 2026) (noting this procedural issue but explaining why defendants' "arguments are" nevertheless "unpersuasive on the merits").

Among other things, the Lanham Act authorizes prevailing plaintiffs to recover "any damages sustained." 15 U.S.C. § 1117(a). "A recoverable loss . . . can take a variety of forms." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 475 (6th Cir. 2022). That includes compensation for "lost goodwill," and the Foundation has plausibly alleged that kind of injury. *Id.*; *see also ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 969 (D.C. Cir. 1990) (noting that "actual damages" can include "quantifiable harm to the plaintiff's good will"). The complaint supports the plausible inference that potential or past Foundation supporters have been duped into engaging with Etemadi's new organization when they think they are supporting or engaging with the Foundation. *See* ECF 1 ¶ 26 (alleging "actual confusion"); ECF 1-5 at 3–4. That leads to the similarly plausible inference that those would-be supporters have "soured" on the Foundation's "brand" because they were tricked. *Max Rack, Inc.*, 40 F.4th at 475. To be sure, the Foundation may or may not be able to prove these or some other compensable damages down the line. But for now, it has done enough to plausibly state a claim for damages.

**B. The state law claim survives the motion to dismiss.**

Finally, Etemadi argues the Court should dismiss the common law claim either because it should not retain supplemental jurisdiction after dismissing the federal claims, or because it "fails for the same reasons" as the Lanham Act "trademark infringement claim." ECF 20 at 21–22. The Court is not dismissing the federal claims and sees no other reason at this stage to decline supplemental jurisdiction. *See* 28 U.S.C. § 1367(a), (c). And because Etemadi otherwise rested on

the same arguments that failed when aimed at the federal claims, the common law claim survives the motion as well.

* * *

Etemadi's motion to dismiss for failure to state a claim, ECF 19, is **DENIED**.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: September 1, 2026